Good morning, your honors. May it please the court, Mr. Busey. My name is Jeremy Sosna, and I represent the appellant Wilbur-Ellis in this matter. The rules of civil procedure in this court's own decision in Ahearn make it abundantly clear that a party cannot be deprived of discovery even where the court and the defendants in the lawsuit disagree that the claim has merit. This is really a case about fundamental fairness. Whether it's an abuse of discretion for the district court to require a plaintiff to effectively prove the merits of their trade secret claim before they're entitled to any discovery on any claim, including a non-trade secret claim. The answer to that question is clearly yes, it is an abuse of discretion. The court abused its discretion by first refusing to require the defendants in this lawsuit, the appellees, to participate in discovery. They produced not one single substantive response and not one single document. And then the court compounded that error by entering summary judgment against Wilbur-Ellis, even though there were ample fact issues that prevented that. Wilbur-Ellis is here today to request that the court reverse the district court's orders and remand this case with direction for the district court to compel the appellees to engage in discovery and to vacate summary judgment. I first want to talk about the abuse of discretion on the discovery. And I recognize that this is something that not very often comes before this court. But it is what, it's the decisions on the discovery side of things that compounded all of the other errors. And the district court, all of its rulings were based on the faulty premise that Wilbur-Ellis was required to do two things. First, that it was required to pre-identify its trade secrets, which I would submit to this court is in contrast and at odds with this court's decision in Ahearn. And second, that when it did do that in its first amended identification, that somehow Wilbur-Ellis failed to meet the standard with reasonable particularity as required by the Defend Trade Secrets Act. Let's start first with the pre-identification. I would submit, Your Honors, that that requirement, first off, it's nowhere found in the Defend Trade Secrets Act. There's no decisions by this court that would require a plaintiff in a trade secrets case to do so. And certainly, the failure to pre-identify is not a basis and in fact, is an abuse of discretion to deny discovery on all of the other claims in the case. But I would argue that that obligation is at odds with Ahearn. If Ahearn means anything, Ahearn means that once a plaintiff meets its burden of proving, of alleging claims that are plausible, then it's entitled to discovery. And there's no decisions in this court that would rule to the contrary. Counsel, would you agree that discovery, though, is limited to relevance documents and information? Your Honor, I would, Judge Graz. I would absolutely – it's documents that are relevant or that could lead to the discovery of admissible evidence. But in this case, we were provided none. Wilbur-Ellis was given literally not a single document, not a single substantive response. In fact, if the court were to look at the responses to the interrogatories and requests for production of documents, all you will see is objections. And throughout the course of this case, that's exactly what happened. Defendant Stonewalled. And in fact, I would submit to this court that if that is appropriate in discovery, then every trade secret plaintiff is going to engage in that exact same tactic. They're going to prevent a plaintiff from obtaining the information that is only – much of which is only in the hands of the bad act. There's absolutely – and I think that's the teaching of Ahearn. And also the Quintara case in the Ninth Circuit, which we've cited, obviously, in the reply brief. And of course, that decision was not issued when we entered – submitted our opening brief. Counsel, isn't – it's my understanding or recollection that Ahearn is not a discovery case. It's a motion to dismiss case. Different – different stage, different phase of proceeding. How does that help you? Well, I think it helps us a lot, Your Honor, in this way. That if a plaintiff – first off, Ahearn does not indicate that there's a two-step process. Well, but there – I'm sorry. I – you go ahead and finish, then I'll ask my question. Yeah, I – look, Ahearn means nothing, Your Honor – Your Honors, if a plaintiff is – meets its standard of sufficiently identifying its trade secrets in the complaint, but then is denied discovery. Because the whole purpose of Ahearn was to say, we're not going to make merits-based decisions. And in fact, this Court's decision in Aegis, which is 8F.4.531, directs that decisions regarding the sufficiency, whether a trade secret is sufficiently identified, is a fact issue. And it has to be done either at summary judgment, which is, of course, after discovery, or by a jury. Go ahead. And so, Ahearn would mean nothing if all that did – if all the plaintiff was required to do is to get past a minimal pleading standard, and then was deprived of any discovery to determine whether or not the information that's solely in the possession of the bad actors, in fact, proves the claims. Now, the issue that I see is this. Ahearn is simply a plausibly pleading case. And once it's plausibly pled, you have a case. Discovery is, once again, as we've – as we indicated, it's limited to relevant evidence or things that are reasonably designed to lead to admissible evidence, right? So if we look at that standard, what the district court here said was that the categories that were identified were so broadly identified that it amounted to a fishing expedition. Nothing unusual in that. That happens in cases all around the country every day of the year, right? What's unusual here is that you went back and then you made a more definite statement of what you thought was the identifiable, discoverable information related to trade secrets, and the district court said it's still just generalized and too general to be anything other than a fishing expedition. And so it seems to me the abuse of discretion question turns entirely on that point, because what happens when we resolve that question is going to tell us what happens with the rest of the case. It all flows naturally. My issue – my question to you is what did the district court get wrong when it said that your repeated attempts to identify issues continued to be so broadly categorical that they were not actually sufficient to be anything other than a fishing expedition? Well, I think the district court erred in two ways on that front and abused its discretion in two ways. First, we have to look at the language of the statute, and 18 U.S.C. 1839.3b defines trade secrets very broadly. I recognize that the Nebraska statute has a more narrow definition, but the DTSA defines it as, quote, all forms and types of financial, business, scientific, technical, and economic or engineering information. And if the court were to look at the First Amended identification of trade secrets, to the extent that that's even required of Will Rellis, which of course we submit to this court that it is not, that's exactly the types of information. In fact, it's very much aligned with the types of information that the court found sufficient in AHRQ. In fact, the First Amended identification not only does it identify all of the categories that are set forth in 1839, but also specific files that we know were taken. Now this is not, and I think this is an important point here, this was not a case where Wilbur Ellis had zero evidence where it was just going on a fishing expedition. This is a case where we had an orchestrated scheme where a number of employees, including the athletes here and Mr. Downing in the companion case, who was a co-conspirator, and that will be before this court, in which we got a jury verdict on virtually the exact same set of facts. In this case, we have all of these co-conspirators leaving on the exact same day, wiping all of their computers except for two, and on at least one of those computers, we know that Mr. Peterson downloaded thousands of files. Here's what else we know. This of course is all in, I would encourage the court to look at, the recitation of the documents or the facts in what's R.166 at the lower level, pages 7 through 9. Here's what else we know. We know that these individual at the athletes immediately started to solicit customers and converted 75 to 80 percent of all of those customers within a short period of time. In this business, it's not uncommon for farmers to follow the person that they've been dealing with forever, right? Even if everybody follows all the rules, I grew up in a rural place, the relationships are innately personal for most farmers as opposed to with any particular corporation because the products, while not fungible, they are similar and once you've decided you're satisfied with one group of products, you keep with that group of products generally. One of the reasons why you don't generally keep with them is if your guy goes somewhere else, right? So what are we exactly to draw from? Is the percentage so high and so quickly achieved that it tells us something? Yeah, and that's what Judge Ebinger said in her decision in the companion case in Downing. I'm an Iowa kid, so I grew up in a small town, about 100 people in Iowa, and I do understand that relationships matter. What you just articulated, Judge Erickson, is an issue for the jury to decide. So whether the conversion and quick conversion at the rate at which they were converted was so high that it indicated the use of trade secret information. That's certainly an argument that Mr. Busey and his clients are able to make to the jury, but it's not a decision that should have been made before Wilbur Ellis was even entitled to any discovery whatsoever. Let's say we decide that there was no abuse of discretion on the discovery, is that question standing alone with the evidence that you actually have before the judge sufficient to at least have that claim survive? Yeah, I think without question on the trade secret claim. I would encourage the court to look, and it's a Nebraska decision, the Crabar decision, which is 644 F. Supp. 3, 313, and in that case, it was a very similar situation in terms of the types of information at issue. In that case, the district court said, if anything, plaintiff's claims are stronger under the federal statute because under federal law, information can be a trade secret if it is not readily ascertainable, and so same types of information, and if I may, Your Honors, I'd like to reserve the remainder of my time for rebuttal. I did a, if I may ask a question, are you still appealing the breach of duty of loyalty claim out during the two-week period, and if so, what is the basis for jurisdiction of this court? Well, the basis for the jurisdiction is the limitation that the district court put on in place as to damages for that claim. I mean, the district court basically said, the only damages you get are the amount of money that you would have paid them during this two-week period, but we know during that same two-week period that they were soliciting clients and doing acts that had a lingering effect, and so our view is, though, even though the decision was granted in our favor, in other words, it would have gone to trial, the limitation on that particular claim in terms of damages is, in fact, appealable properly before the court. Thank you. Thank you, Your Honors. Thank you. Counsel? Mr. Seed. Thank you. Good morning. My name is Zachary Busey, and I represent Appalese. I'd like to begin right with the jurisdictional question. It relates to our cross-appeal and the appeal of the duty of loyalty claims. And the parties, maybe in the one area where they tried to agree before the district court were trying to stipulate in a way that would move us on to appeal quicker as opposed to trying a kind of two-week claim at the end of the day. And the district court sniffed that out, admittedly, and flagged the parties for working together to try to create jurisdiction, and the parties followed up in an email that was actually counsel for the appellant that said, never mind court, all we're looking for is the standard dismissal under Rule 41. And with that, the breach of duty of loyalty claims were dismissed without prejudice under Rule 41. And we raised in this appeal the jurisdictional issue that flows from that, that if perhaps the parties had stipulated to something or the court had adopted the stipulation, then Appalese would not be in a position to make that argument and would not be making that  But when the district court took the Rule 41 dismissal on the breach of duty of loyalty claims, it eliminated the ability to have appellate jurisdiction as we understand it on those claims. And so in the briefing and in this appeal, we argue that claim in the alternative only if the court accepts jurisdiction over it. And I'll continue a bit with that claim while I'm speaking about it. The issue with the duty of loyalty claims under Nebraska state law is that the claim requires a showing of substantial hindrance. And I think that's fairly undisputed. The district court had that in its opinion and correctly found that there was no evidence in the record establishing any kind of or creating a fact question around substantial hindrance. What the district court did next was say that because of this court's decision in Western part involved a period of dual employment, and that was a measure of damage that the jury awarded in that case against a lot of other facts that are not in this case, that because that happened, then there was a question of fact over whether the duty, the two-week period of claim dual employment led to a breach of the duty of loyalty. The court did this without any analysis around substantial hindrance. And for Appelese, our point is that the district court created a per se breach, a per se breach of duty of loyalty that neither Nebraska nor this court has ever before recognized. Did they really? Or didn't the district court simply say it was a tribal question of fact? I think that the court did, a tribal question of fact around whether it was a per se breach. So I agree. The district court did not find liability, and that phrasing is perhaps poor. And so it's not per se. There's an open question of fact. I mean, what it says is that on the facts as pled, there is a sufficient question to move forward. Our struggle with that is that the district court, and essentially the paragraph above that says there is no evidence of substantial hindrance. And so how can it be that this period of dual employment has a question of fact sufficient to take the claim to the jury when the record has no evidence of substantial hindrance? And everyone, I believe, the Nebraska courts, this court, agrees that substantial hindrance is a necessary element for the breach of duty of loyalty claim. And so I accept certainly the point that per se is not the best phrasing, but is perhaps recognizing a claim that eliminates the element of substantial hindrance, and we believe that is error. And so on the cross appeal, if the court does recognize or accept jurisdiction over that claim, we do believe that judgment should be rendered in full under any type of Rule 56 analysis. Moving into the claims on the appeal itself, we heard a lot about discovery in the opening argument, and one thing that was not addressed is whether those issues themselves were preserved or sufficiently litigated in the lower court to have them on appeal. And I know we have this timeline in the briefing, it is a little bit of zigging one way and bagging the other, but there are aspects of these discovery rulings that were not preserved for appeal. One of them is the initial order to identify trade secrets. Appellant speaks about this order in the context of where it came up later, which is when the magistrate judge and following objections, the district judge, were analyzing whether the sufficiency of the identification was enough to prompt third-party discovery or otherwise compel some broader set of discovery. But the actual identification, the actual ruling to identify the at-issue trade secrets, that came from the magistrate judge and there were no objections or other appeal filed to the district judge. The other place where this comes up is with the motion to compel. There was a January 2023 motion to compel, kind of a compel everything type motion to compel. And the magistrate judge addressed that motion in two ways. First, the judge took issue with the fact that appellant at the time did not work through the lower court's requirements for bringing or raising any type of discovery dispute. And on this independent grounds, found that the motion should be denied. And the magistrate judge then moved into the merits and said that then defendants are appellees objections would largely be sustained and denied the motion on that grounds. The procedural ruling, that was never appealed. No objections were filed. It was never taken to the district judge. So when we speak about an abuse of discretion analysis or we speak about whether that ruling on the motion to compel was within the magistrate judge or the district court's discretion, it is a bit of a moot point at the end of the day because the independent grounds for denying the motion were never challenged to the district judge and were not otherwise preserved for this appeal. On the issue of discovery overall, again, a lot was said and a lot has been said about the trade secrets, the documents, the customers. There's no evidence of any of this in the record. So there were documents that were talked about with Mr. Peterson. Mr. Peterson used drives and both storage drives in his work with Wilbur Ellis and in some side work and businesses that he did. And before this lawsuit was even filed, Wilbur Ellis reached out to Mr. Peterson and said, send us back the drives. And Mr. Peterson did that. Those drives don't appear anywhere in the case. Documents that were on those drives don't appear anywhere in the case. In Mr. Peterson's deposition, appellant had ample opportunity to question him about the documents or dig into what they contended the merits of them were. We've seen the number 10,000 and the deposition testimony bore out that there were fewer than 10 that appellant could even claim may have been their documents or had their information. But again, those aren't in the record. There is no document identified as coming from this drive. And so when we hear appellant didn't have access or appellant didn't have something at the end of the day, the drive that they focus most of the case on, they had that before this lawsuit was ever filed. The other piece that comes up about documents or access or needing information that there was apparently an absence of are the third parties or the customers. So every allegation in this case turns around someone supposedly using something improperly to solicit or communicate with a third party or a customer. There is no evidence from any third party or any customer in the record. Certainly not in the summary judgment record. Those individuals were available to appellant throughout the case and they were even available to appellant before the case was ever filed. The last piece that I'll emphasize, if I may please, about the discovery is I think the record is fair about the absence of any engagement from appellant around party discovery. And early in the case, back in I think it was May of 2022, you'll see the email exchanges in the records, please tell us what it is that you think we have. If you can say with more particularity whatever it is you think that we took, we will deny taking it or confirm that we do not have it with comparable particularity. But again, my clients could not produce what they did not have and they could not produce what they did not take. Those objections were discussed at length with the magistrate judge and even through some manner of objections to the district judge and none of those rulings come within the abuse of discretion resulting in some fundamental unfairness. That may be the case if you had a situation where there were no depositions that were taken. But all party depositions were completed in this case. Deposition of Simplot was completed and there was nothing that came out of those depositions that moved the appellant to go back to the court to identify something that may have been omitted in an earlier motion to provide more support for something that may have only had tacit support in an earlier motion or even to call out or lay blame with something that appellees had represented or done. In fact, there were two separate deadlines, separate and apart from the depositions. The magistrate judge gave appellees ample time to file or renew motions to compel. They set specific deadlines for them and appellant abandoned the issues and never came back to them. Counsel, in terms of the requirement by the district court to identify trade secrets with greater specificity, how far can a district court go in placing restrictions on discovery without undermining Rule 26? I think pretty far. I think district courts are given wide latitude to do that. I think the district judge said it best in this case when saying that I don't, and I'm or where the line falls of going too far because what the court is doing in this case is not coming up to that line. I think that that perfectly encapsulates this case. There is a lot that appellant pushes this court to rule on or to take up as an issue of perhaps first impression or even some type of precedential reset in terms of trade secret discovery. Again, we spoke about Ahern in the opening argument. Appellant, ironically, got the benefit of Ahern even before this court decided. The complaint was riddled with upon information and belief briefing, and we filed a motion to dismiss, arguing that that is insufficient for 12b-6, and it should be granted the information and belief pleading is not enough, and the district court got it right. It decided that it was, and this court came behind that later with that decision. I don't think this case presents the court with a fair or well-developed opportunity to set that bright line, and I think that what the district court, whether the magistrate judge or the district judge following objections did in this case comes well within their discretion. Unlike the Quintero decision out of the Ninth Circuit, it was not used to prevent discovery. It was used to shape discovery, to control the order and flow of discovery, to prioritize party discovery before third-party discovery, and so on and so forth. I think that the district court did that effectively on the whole, and again, the fulsome party depositions support what the district court was, in our view, sniffing out from the very beginning that the only reason there is a lot of smoke here is because appellant continues to fan the flames, not because there is something tangible or they're in possession of something or the many things they have access to, they've gone and gotten it and put it in front of the court or put it in the record itself. Counsel, as you're closing here, what exactly are you asking the court to do on your cross appeal? Thank you, Your Honor. On the cross appeal, if the court is accepting jurisdiction over the breach of duty of loyalty claims, then on a de novo review of the Rule 56 motion, we would ask the court to enter judgment in full, which again, I will take any correction on my terminology, but I believe it would be to affirm the partial judgment from the district court and render the remaining judgment on the portion of the claim that the district court denied summary judgment around. Your opponent's argument is essentially that whether or not a trade secret has been sufficiently identified, we should apply the Quintero standard, that that becomes a question of fact at the discovery stage, and the question is, is how would you see that working and what limitations would be put on it and what problems would that cause? Yeah, a couple of things. So I do think that the district court did what the Ninth Circuit told the district court to do in Quintero, is instead of drawing this bright line there, it was around a Rule 12F motion to strike, to work through these alternative ways. And I know that I'm out of time. If I could have a bit more time, I can finish up in Quintero. Thank you. And so, again, I think this case is a poor vehicle to shape out what the outer edges or the brighter lines of that rule looks like. Is it desirable to even establish a bright line? I don't think you can have a bright line, no, not on something like this. Now, maybe Quintero starts to get in view of the line. You can see it on the horizon where essentially you are coming into a post-12B posture and using 12F or using discovery to essentially stop the case at the end of the day. But that isn't what happened here. And as I read the Quintero opinion, what I see the Ninth Circuit doing is just saying, you have to do something. You have to continue to work within the wide discretion that we give you as a district court to try to shape the case based on what you're hearing from the parties, what you're seeing in the record, or, like in this case, what you are not seeing in the record. And I do think that the district court did that here. Again, did they do it in the way that Appellant agrees with? No. Did it do so in the way that Appellee agrees with? Also no. We lost several discovery rulings before the district court. But I do believe that they did so in a way that comes well within the wide discretion that they are afforded, which is why on the remaining summary judgment issues and the merits of the remaining claims, we do ask that the court affirm that ruling from the district court. Thank you. Thank you. All right. Thank you, counsel. I appreciate your argument and you may . . . Thank you, Your Honor. . . respond. I think you have a little over two minutes. Yeah. Thank you, Judge Shepard. I've been doing this for nearly 30 years in this space, almost exclusively. And I have never had a case in which a party has refused to even identify the names of witnesses, identify documents in their possession, and just served objections. And I've never had a case in which the district court sanctioned that behavior and said you don't have to do it. Now, a couple of points that I want to make sure that I get in my short time. First, there were party depositions, but we were flying blind because the court, the district court refused to compel any discovery. So yes, at the very end, we took depositions because we had to, but that should not be construed as we were given fulsome discovery. We were not. My client was not given that. Second thing I would say is that the inability to get discovery in the district court's abuse of discretion flows . . . all of the decisions beyond that flow from that. Because while we submit to this court that there was ample evidence in showing a question of a fact that should have allowed these claims to go to a jury, the fact of the matter is there would have been more. And in fact, you know, the idea that we didn't have any documents, well, if the court were to look at the request for attorney's fees that was submitted by the apolis in this case, what they'll see is that there was time spent and submitted for attorney's fees reviewing documents. What documents are there? And of course, we're not here in front of this court on the Downing case, but if the court were to look at, and that is at the district court level, 421-CV332, what you see there is the same exact gamesmanship in discovery. We don't have anything. And then on the eve of trial, only after, at the very last minute after we were able to get information in a deposition from the defendant, the apoli in that case, we learned that counsel had in his possession 1,100 documents, nearly 1,100 documents that were directly relevant to the case. And the court, of course, in that case, Judge Ebinger, reset trial and we had additional discovery. So, we would submit to this court that the district court's failure to provide any discovery to Wilbur Ellis was an abuse of discretion. And we would ask that the court reverse all of the orders, including the summary judgment order. Thank you, Your Honors. All right. Thank you, Counsel.